STEVEN T. GUBNER – Bar No. 156593
TAMAR TERZIAN – Bar No. 254148
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:       sgubner@bg.law
             tterzian@bg.law

Counsel for Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO. 1:20-bk-10276-VK |
| HORMOZ RAMY, | Adv. Case No.: |
| Debtor. | Chapter 7 |
| DAVID SEROR, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>HORMOZ RAMY, an individual,<br><br>Defendant. | **TRUSTEE'S COMPLAINT TO DENY DEBTOR'S DISCHARGE**<br><br>**[11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a) (3), 11 U.S.C. § 727(a) (4)(A) and 11 U.S.C. § 727(a) (5)]**<br><br>DATE:   [TO BE SET]<br>TIME  : [TO BE SET]<br>PLACE: 21041 Burbank Boulevard<br>              Courtroom 301<br>              Woodland Hills, CA 91367 |

David Seror, the duly appointed Chapter 7 Bankruptcy Trustee (the "Trustee-Plaintiff"), complaining of Debtor, Hormoz Ramy (the "Defendant" or "Debtor"), hereby alleges as follows:

## NATURE OF ACTION AND JURISDICTION

1.      In compliance with Local Bankruptcy Rule 7008-1, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 151, 157(b)(1) and (2), and 1334, as well as General Order No. 242-A of the District Court for the Central District of California, on the basis that this action is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A), (J), and (O), and arises in or under the chapter 7 bankruptcy case of *In re Hormoz Ramy*, 1:20-bk-10276-VK currently pending before this Court.  The Trustee consents to entry of final orders or judgment by this Court.

2.      Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) in that the instant proceeding is related to the Bankruptcy Case presently pending under Title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California.

3.      This bankruptcy case ("Case") was commenced by the filing of a Voluntary Petition by Debtor under Chapter 7 of Title 11 of the United States Code (beginning at 11 U.S.C. § 101, *et seq.*, "Bankruptcy Code") on February 4, 2020 ("Petition Date").

4.      While this Case is merely six months old and has been pending during a national pandemic, the Trustee's investigation into the financial and business affairs of the Debtor to date reveals a wholesale disregard by the Debtor of his obligation to properly disclose assets and liabilities.  The Trustee has discovered numerous assets of significant value that the Debtor failed to disclose as detailed below. The Debtor has also hampered the Trustee's investigation efforts by obfuscation and lack of candor.

5.      The Trustee seeks denial of the Debtor's discharge on a number of discrete grounds, including sections 727(a)(2) (concealing property of the estate with intent to hinder, delay or defraud creditors), (a)(3) (concealment of books and records), (a)(4) (knowing and fraudulent false oath or account), and (a)(5) (failure to explain satisfactorily the loss of assets to meet the Debtor's liabilities).

6.      Pursuant to the *Order Granting Motion of Chapter 7 Trustee to Extend Deadline Within Which to File a Complaint Pursuant to 11 U.S.C. § 727* [Doc. 31], the last day to file a

1   complaint against the Debtor based upon Section 727 of the Bankruptcy Code is extended to

2   August 31, 2020.  Thus, this action is timely.

3   **PARTIES**

4       7.     The Trustee brings this action solely in his capacity as chapter 7 trustee for this

5   estate.

6       8.     Defendant Hormoz Ramy is the Debtor in this bankruptcy case, and at all relevant

7   times was and is an individual residing in the Central District of California.

8   **OPERATIVE FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

9       **A.**     **Procedural History Re: Bankruptcy Case**

10      9.     Concurrent with the filing of the Debtor's petition, the Debtor filed his Schedules

11  and Statement of Financial Affairs.  The Defendant filed amended Schedules and Statements on

12  May 26, 2020 [Doc. 22, 23].

13      10.    The meeting of creditors in this Case was originally set for March 16, 2020;

14  however due to the current COVID pandemic, the hearing did not take place on that date and was

15  continued to April 27, 2020.   Debtor appeared on that date and was examined.  At the meeting of

16  creditors, Debtor provided testimony about his assets and business affairs that directly conflicted

17  with the information he provided in his schedules.

18      11.    The Trustee continued the meeting of creditors to June 22, 2020, for the Debtor to

19  provide additional documents and testimony.  The Debtor appeared on June 22, 2020 and the

20  Trustee conducted a further examination of the Debtor.

21      12.    Furthermore, in order to question the Debtor in more detail, the Trustee through

22  counsel took a Rule 2004 examination of the Debtor on August 17, 2020 at 9:30 a.m.

23      13.    Based on the Trustee's investigation and Debtor's testimony, Trustee is informed

24  and believes that Debtor has omitted material assets from his bankruptcy schedules, and has done

25  so with intent to hinder, delay and defraud his creditors.  Among other things, it is apparent that

26  Debtor has been involved in several ongoing businesses, which business have significant assets,

27  none of which has been disclosed.  Additionally, the Debtor has misled the Court in the amount of

28  equity he has in real property, and omitted his interest in personal property assets. It is apparent

3

1  that the Debtor has engaged in complex business transactions with various family members in

2  attempts to shield his assets from creditors.

3      **B.    Debtor's Failure to Disclose Business Assets**

4      The Trustee upon information and belief, and based thereon alleges the following:

5          **1.    Ramy & Associates, LLC**

6      14.    Debtor has and always has had an ownership interest in Ramy & Associates, LLC

7  ("R&A, LLC"). R&A, LLC owns real property located at 2350 1st Street, Simi Valley, CA ("1st

8  Street Property"). Debtor failed to disclose that R&A, LLC has an undivided 37.5% interest in the

9  1st Street Property. In 2019, R&A, LLC acquired an additional undivided 25% in the 1st Street

10  Property.

11      15.    Debtor denies having interest in R&A, LLC, however, in a State Court matter,

12  Debtor testified that he is the managing member of R&A, LLC. In addition to testifying as the

13  managing member of R&A, LLC, Debtor testified that he owned 37.5% of R&A, LLC. Further,

14  in 2016, Debtor executed a settlement agreement in a State Court matter on behalf of R&A, LLC.

15      16.    Debtor did not disclose any income from R&A, LLC in Paragraphs 1 or 18 of the

16  Statement of Affairs filed by the Debtor under penalty of perjury, nor is any ownership interest in

17  these businesses listed in his Schedule B.

18      17.    According to the Secretary of State website, Debtor's principal residence is the

19  mailing address for R&A, LLC. Debtor's son, Alejandro Ramy, is one of the members of R&A,

20  LLC. Debtor's lack of candor as to his interest in R&A, LLC is alone enough to find this Debtor

21  is not entitled to a discharge of debts.

22      18.    Based on the foregoing, Debtor continues to conceal his interest in R&A, LLC and

23  claims his brother is the owner of R&A, LLC.

24          **2.    Ramy & Associates, Inc.**

25      19.    Similarly, Debtor perjured himself during a 2004 Debtor's examination when he

26  testified that he had no interest in Ramy &Associates, Inc. ("RAI") and by failing to disclose his

27  interest in RAI in the Statement of Affairs and his Schedule B. During his 2004 examination,

28  Debtor admits that in 1990, he incorporated RAI and was the 100% owner of RAI. During

1   Debtor's 2004 examination, Debtor testified that he has no current interest in and never had an

2   interest in RAI.  However, Debtor through his car dealership, Reseda Dodge, invested monies into

3   RAI and was involved in the in real estate transactions on behalf of RAI.  RAI currently owns and

4   operates 9901 Hageman Road in Bakersfield, CA (the "Bakersfield Property"), which has an

5   estimated value of $10 million.  Debtor is the signatory for RAI on all documents related to

6   purchase of the Bakersfield Property.

7        20.    Debtor on behalf of RAI also signed a property management agreement for the

8   Bakersfield Property.  While the Debtor alleges to have no interest in RAI, in **April 2020**, Debtor

9   has registered with the California Secretary of State as the Chief Executive Officer of RAI and

10  listed his principal residence as the mailing address for RAI.   Debtor continues to receive checks

11  and bank statements for RAI at his principal residence.  During his 2004 examination, Debtor

12  denies having an interest in RAI and states his brother uses his address for mailing purposes.

13           **3.    Pashflex, Inc.**

14       21.    In addition to knowingly omitting his interests in R&A, LLC and RAI, Debtor failed

15  to disclose on his Schedule B or his Statement of Financial Affairs his interest in Pashflex, Inc.,

16  which operates a restaurant known as Millies in Van Nuys, California.  During his 2004

17  examination, Debtor stated that since 2017, he has no an interest in Pashflex, Inc.   However, as

18  recently as in 2016, Debtor received a K-1 from Pashflex, Inc.  During his 2004 examination,

19  Debtor testified that his brother currently owns 100% interest in Pashflex, Inc. and operates the

20  restaurant.   Debtor testified during his 2004 examination that in 2017 he sold his 49% interest to

21  his brother in the amount of $150,000.  However, based on a third party creditor investigation, in

22  July 2019, bank records show that Debtor had signatory authority on the bank account for

23  Pashflex, Inc., indicating the Debtor still retained his ownership interest in this entity.

24       **C.    Debtor's Omissions Re: Real Property Assets**

25       22.    While the Debtor disclosed his interest in the 4470 Winnetka Ave, Woodland Hills,

26  CA, (the "Winnetka Property"), Debtor also lists a deed of trust held by his brother, Massoud

27  Rami, in Schedule D, which lien appears to encumber the property and leaves no equity.  The

28  Trustee's 2004 examination of the Debtor revealed that while these deed of trusts were recorded,

1    Debtor in the past twenty years has failed to make a single payment to his brother, and that his

2    brother, in turn, has never taken any action to recoup monies he purportedly loaned.  As a result of

3    Debtor encumbering the Winnetka Property with his brother's deed of trust, there is no equity in

4    the property to distribute to creditors.

5         23.    Further, Debtor omits in his Schedule J, any outstanding monthly payments to his

6    brother.  Debtor only lists monthly mortgage payments on the Winnetka Property of $2,315.15,

7    which only covers payments towards the Wells Fargo mortgage, taxes and insurance.  In 2008,

8    Debtor's brother executed a subordination agreement of his interest in the Winnetka Property to

9    Wells Fargo.  Wells Fargo never recorded the subordination agreement.  Neither Debtor, nor his

10   brother, have treated the lien against the Winnetka Property as a true lien, but more as another way

11   to shield Debtor's principal residence from creditors, which leads Trustee to believe that the lien is

12   subject to avoidance or other attack.

13        24.    Debtor also disclosed that he is the owner of a condominium located at 7100 Balboa

14   Blvd, Unit 106, Van Nuys, CA, (the "Balboa Property"), with a valuation of $350,000.  The

15   Debtor testified that he borrowed monies from his sister, Ziba Dineshi, in order to purchase this

16   property, and in exchange agreed to another lien against another property that he owns, in favor of

17   Ziba Dineshi. The Debtor collects rent from a tenant for the Balboa Property who has occupied it

18   for several years.  Again, Debtor failed to disclose this rental income in his Schedule I and

19   Statement of Financial Affairs.  The Debtor failed to disclose in his Schedule J the mortgage,

20   property tax and other payments with respect to the Balboa Property.

21        25.    Debtor's Schedule A also disclosed an interest in vacant lot located in Los Angeles,

22   valued at merely $15,000.  He testified that he owns a 50% undivided interest in this property, for

23   which he paid $50,000 in 1997.  In contrast to Debtor's valuation, Trustee believes the Vacant Lot

24   has a fair market value of $199,000, based on a routine evaluation conducted by Trustee's licensed

25   real estate agent.  In other words, the Trustee is informed and believes that the Debtor placed an

26   unreasonably low valuation on this asset to dissuade the Trustee and other creditors from

27   investigating the asset further.

28

26.     In Debtor's Schedule I Debtor testified that he is retired and that his sole sources of income are Social Security Benefits of $2,371.00, and family contributions of $3,600.  However, Debtor claims three (3) dependents, including a 31-year-old son; a 29-year-old son; and a 22-year-old daughter.

**D.     Other Concealed Assets**

27.     In 2014, a judgment was entered in favor of Debtor as Plaintiff in excess of $4,000,000, and Debtor failed to disclose this valuable asset anywhere in his bankruptcy papers. During his 2004 examination, Debtor had no explanation for the lack of disclosure and acknowledged his interest in the judgment.  As of the filing of this complaint, Debtor has failed to amend his schedules to properly disclose the asset.

28.     Debtor's ex-wife also has an interest in four properties in Mexico.  The Debtor alleges that the properties in Mexico are in the name of his son Alejandro Ramy and that the Debtor has no interest in the Mexico properties.  However, in a State Court action, judgment creditor references the Debtor's 49% interest in the development of Mexico properties under the company name of Constructora Hormoz Ramy.  During his 2004 examination, Debtor admitted to having a 49% interest in Constructor Hormoz Ramy and testifies that he has no knowledge what happened to the company.  On information and belief, Debtor has an ownership interest in this business as well as the properties, none of which has been disclosed.

29.     Debtor currently denies that he owns an interest in the Mexico properties.  However, Debtor's potential interest in real estate assets in Mexico is questionable since in 2019, Debtor received a personal check referencing a house in Baja, California.

**FIRST CLAIM FOR RELIEF**

**DENIAL OF THE DISCHARGE OF THE DEBTOR**

**11 U.S.C. § 727(a)(2)**

30.     Trustee incorporates herein by reference the allegations contained in paragraphs 1 through 29 of this Complaint as set forth above.

31.     As alleged above, Debtor knowingly and fraudulently failed, under penalty of perjury, to reveal and/or disclose in his Schedules and the Statement of Affairs his interest in RAI.

1  Based on the California Secretary of State website alone, Debtor is the Chief Executive Officer for

2  RAI.  Debtor's principal residence is listed as the mailing address for RAI.  The documents or

3  records pertaining to R&A, LLC and RAI have not been turned over by the Debtor to the Trustee

4  as required under Section 521(4).

5          32.     As alleged above, Debtor knowingly and fraudulently failed to reveal and/or

6  disclose in the Schedules and the Statement of Affairs his interest in various businesses.   Debtor

7  testified in a State Court matter that he is a managing member of R&A, LLC and that he had a

8  37.5% interest in R&A, LLC.  Also, from 2015 through June 2019, Debtor received checks from

9  R&A, LLC.  During the 2004 Examination, Debtor provided no satisfactory explanation for

10  receiving checks from R&A, LLC and alleged the payments were for services Debtor provided to

11  his brother, but could provide any details or proof.

12          33.     Debtor knowingly and fraudulently failed to reveal and/or disclose in his Schedules

13  and the Statement of Affairs his interest in a Judgment in favor of Debtor in excess of $4,000,000.

14          34.     Debtor knowingly and fraudulently failed, under penalty of perjury, to reveal and/or

15  disclose in his Schedules and the Statement of Affairs his rental income received from the Balboa

16  Property.

17          35.     Debtor knowingly and fraudulently failed, under penalty of perjury, to reveal and/or

18  disclose in the Schedules and the Statement of Affairs his sources of income.

19                              **SECOND CLAIM FOR RELIEF**

20                              **(DENIAL OF DISCHARGE)**

21                              **[11 U.S.C. § 727(a)(3)]**

22          36.     Trustee incorporates herein by reference the allegations contained in paragraphs 1-

23  35 of this Complaint and, by this reference, incorporates said allegations as though set forth fully

24  herein.

25          37.     Debtor concealed, destroyed, mutilated, falsified or failed to keep or preserve any

26  recorded information, including books, documents, records and papers, from which the Debtor's

27  financial condition or business transactions might be ascertained.  Such acts were not justified

28  under the circumstances of the case.

38.     Debtor has not turned over books or documents to the Trustee, which actions continue to hamper the Trustee's administration and investigation into this estate.  Trustee, pursuant to a consensual 2004 examination, requested documents pertaining to Pashflex, Inc., R&A, LLC and RAI.  Debtor's response was the documents are not in his possession.  Debtor has denied having any bank accounts or other documents pertaining to the businesses.  Debtor also has denied having a lease agreement for the Balboa Property, or an accounting of the rents collected from the Balboa Property.

39.     Debtor's discharge should be denied pursuant to Section 727(a)(3) for all the reasons stated above.

## THIRD CLAIM FOR RELIEF

### (DENIAL OF DISCHARGE)

### [11 U.S.C. § 727(a)(4)(A)]

40.     Trustee incorporates herein by reference the allegations contained in paragraphs 1-39 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

41.     The Debtor knowingly and fraudulently, in or connection with the instant bankruptcy case, made a false oath or account, by intentionally denying and omitting his business interests in Pashflex, Inc., R&A, LLC and RAI. Debtor also intentionally concealed and failed to disclose his interest in the $4,000,000 Judgment, and the income he received from his rental property.

42.     By reason of the foregoing, the Debtor's discharge should be denied pursuant to Section 727(a)(4)(A).

## FOURTH CLAIM FOR RELIEF

### (DENIAL OF DISCHARGE)

### [11 U.S.C. § 727(a)(5)]

43.     Trustee incorporates herein by reference the allegations contained in paragraphs 1-42 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

9

44.    Debtor has failed to explain satisfactorily, before determination of denial of discharge under Section 727(a), any loss of assets or deficiency of assets to meet the Debtor's liabilities.  As provided above, Debtor has over-encumbered the Winnetka Property and Balboa Property by having false (or objectively avoidable) liens recorded in favor of his brother and sister, therefore depleting the equity in these real properties that would otherwise be available for any creditors.

45.    Further, without justification, Debtor during his 2004 examination failed to explain why the $4,000,000 Judgment in his favor was never disclosed on his Schedule B, nor has he formally remediated his error by amending his schedules.

46.    In addition, Debtor, without justification, failed to explain why the rental income received from the Balboa Property was not disclosed on his Schedule I.

47.    By reason of the foregoing, the Debtor's discharge should be denied pursuant to Section 727(a)(5).

**WHEREFORE**, the Trustee-Plaintiff respectfully prays for judgment against the Debtor as follows:

1.    On the first, second, third and fourth claims for relief, that the Debtor's discharge be denied;

2.    For costs of suits incurred therein, including, without limitation, attorneys' fees; and

3.    For such other and further relief as the Court deems proper.


DATED: August 31, 2020              Respectfully submitted,



                                    /s/ Tamar Terzian
                                    _____
                                    Tamar Terzian
                                    Bankruptcy Counsel for David Seror,
                                    Chapter 7 Trustee

FORM B104 (08/07)                                                    2007 USBC, Central District of California

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

| PLAINTIFFS DAVID SEROR, Chapter 7 Trustee, | DEFENDANTS HORMOZ RAMY, an individual, |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Tamar Terzian Brutzkus Gubner 21650 Oxnard Street, Suite 500 Woodland Hills, CA 91367 (818) 827-9000 (818) 827-9099 dseror@bg.law, rsokol@bg.law, tterzian@bg.law | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only) ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor  ☐ Other ☒ Trustee | PARTY (Check One Box Only) ☐ Debtor  ☒ U.S. Trustee/Bankruptcy Admin ☐ Creditor  ☒ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

TRUSTEE'S COMPLAINT TO DENY DEBTOR'S DISCHARGE

**NATURE OF SUIT** (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
1☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
                    **(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et. seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand: $150,000.00 Sale Proceeds plus Transfers |
| Other Relief Sought | |

FORM B104 (08/07), page 2                                                      2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>HORMOZ, RAMY | BANKRUPTCY CASE NO.<br>1:20-nbk-10276 VK | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISIONAL OFFICE<br>San Fernando Valley Division | NAME OF JUDGE<br>The Honorable Victoria Kaufman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Tamar Terzian | | |
| DATE<br>**August 31, 2020** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Brutzkus Gubner**<br>**By: Tamar Terzian** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.